UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEATHER CHRISTIANSON, | CASE NO. C15-5015 MJP |
| Plaintiff, | ORDER ON SOCIAL SECURITY APPEAL |
| v. | |
| CAROLYN COLVIN, | |
| Defendant. | |

Plaintiff Heather M. Christianson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act after a hearing before an Administrative Law Judge ("ALJ"). (Dkt. No. 14 at 1.) Having reviewed the Parties' briefing and the administrative record, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings.

//

BASIC DATA

Type of benefits sought:

    (X) Supplemental Security Income

    (X) Disability Insurance Benefits

Plaintiff:

    Sex:  F

    Age: 42 (at hearing); 41 (at application)

Principal Disabilities Alleged by Plaintiff: obesity, diabetes, bipolar disorder, depression, posttraumatic stress disorder (PTSD), anxiety disorder, personality disorder, marijuana abuse, periodic psychogenic movement disorder of no clear etiology, mild sleep apnea, osteoporosis, and degenerative disc disease

Disability Allegedly Began: April 1, 2008

Principal Previous Work Experience: child-care attendant, general merchandise salesperson, general cashier, home health attendant

Education Level Achieved by Plaintiff: high school education; approximately one year of college education

PROCEDURAL HISTORY

Before ALJ:

    Date of Hearing: April 5, 2013

    Date of Decision: May 16, 2013

    Appears in Record at:  AR at 20–37

    Summary of Decision:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2.  The claimant has not engaged in substantial gainful activity since April 1, 2008, the amended alleged onset date (20 C.F.R. 404.1571 et seq., and 416.971 et seq.).

3.  The claimant has the following severe impairments: obesity; diabetes; bipolar disorder; depression; posttraumatic stress disorder (PTSD); anxiety disorder; personality disorder; marijuana abuse; periodic psychogenic movement disorder of no clear etiology; mild sleep apnea; osteoporosis; and degenerative disc disease (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she could never climb ladders, ropes, or scaffolds.  She is able to occasionally climb ramps and stairs and frequently handle and finger bilaterally.  She should avoid exposure to hazardous working conditions such as proximity to unprotected heights, moving machinery, open water, sharp objects, and hot surfaces. She is limited to tasks that can be learned in 6 months or less.  She is able to adapt to a predictable work routine with no more than occasional changes.  She is able to perform work that involves minimal (less than 5% of the workday) public interaction and occasional and superficial interaction with co-workers.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born in 1970 and was 36 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2007, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court must set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th

Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); see also Tackett, 180 F.3d at 1098–99.

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. See 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

ISSUES ON APPEAL

1.      Whether the ALJ provided legally sufficient reasons for finding Plaintiff not fully credible?

2.      Whether the ALJ erred in rejecting the examining source medical opinions of Dr. Corpolongo, Dr. Tartalia, and Dr. Neims in favor of the non-examining sources?

DISCUSSION

I.     Plaintiff's Credibility

Plaintiff argues the ALJ erred in discounting Plaintiff's credibility.  (Dkt. No. 14 at 3.)

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1014–15 (quoting Smolen, 80 F.3d at 1281).

Here, the ALJ did not make a finding of malingering.  (AR 25–35.)  Therefore, the ALJ was required to provide specific, clear, and convincing reasons for discounting Plaintiff's credibility.

1        The ALJ found Plaintiff not credible for the following reasons: (1) the objective medical

2  evidence did not support Plaintiff's allegations that she was unable to work; (2) Plaintiff did not

3  follow through with treatment; (3) Plaintiff's "presentations on consultative evaluation and on

4  DSHS exams appear[ed] exaggerated;" (4) Plaintiff made inconsistent statements regarding drug

5  usage; and (5) Plaintiff's activities of daily living "suggest[ed] that she would be capable of work

6  . . . ." (AR 26–32.)  The Court addresses each of these points in turn.

7              a.  Medical Evidence

8        Plaintiff argues the ALJ failed to provide specific, clear, and convincing reasons for

9  finding that the medical evidence conflicted with Plaintiff's allegations.  (Dkt. No. 14 at 4.)

10  Specifically, Plaintiff contends that the ALJ committed legal error by providing a summary of

11  the medical evidence without explaining how that evidence conflicts with Plaintiff's allegations.

12  (Id. at 4–5) (citing Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014)).  The Court agrees

13  with Plaintiff.

14        After stating that Plaintiff's allegations conflict with the medical evidence, the ALJ

15  provides a lengthy recitation of the medical evidence.  (AR 26–29.)  For the most part, this

16  recitation is devoid of any explanation of how the medical evidence cited to conflicts with

17  Plaintiff's allegations.  This is legal error.  See Burrell, 775 F.3d at 1137.  The Court can discern

18  only one instance in which the ALJ attempts to explain how the medical evidence cited conflicts

19  with Plaintiff's allegations.  The ALJ notes that Plaintiff testified at the hearing that she was

20  unable to work because of pain.  (AR 27.)  He then states that her x-rays and other exam findings

21  "suggest that her complaints of pain are exaggerated."  (Id.)  The ALJ then notes that although

22  Plaintiff complained of right wrist pain in August 2008, the x-rays of her right wrist dated

23  August 17, 2008 were negative.  (Id.)  He further notes that in September 2008, Plaintiff reported

24

1    to Tanya Spoon, ARNP that she had low back pain and right wrist pain, but that on her exam

2    "she had full range of motion in her wrist and only slight edema" and that x-rays "of the lumbar

3    spine showed only mild disc space thinning." (Id.)

4         The ALJ's analysis is flawed for two reasons.  First, the ALJ applied the wrong legal test

5    by questioning whether Plaintiff's impairments caused the severity of the symptoms she alleges.

6    Garrison, 759 F.3d at 1014.  Second, even if he had applied the correct legal test, the ALJ failed

7    to account for Plaintiff's most recent x-rays.  These x-rays show moderate degenerative disc

8    disease with mild spondylosis, moderate disc disease with facet arthopathy, and mild T12

9    compression indicating osteoporosis, causing Dr. Suffis to diagnose Plaintiff with low back pain

10   with degenerative arthritis, morbid obesity, status post carpal tunnel releases, and strong pain and

11   disability conviction.  (AR at 533.)  Further, since 2011, Plaintiff has consistently reported

12   increased pain to both ARNP Spoon and Dr. Suffis.  (AR at 27–28.)  Because his analysis does

13   not account for more recent medical evidence that is consistent with Plaintiff's allegations

14   regarding pain, even if he had applied the correct legal test, the ALJ failed to provide specific,

15   clear, and convincing reasons to find Plaintiff not credible.

16              b.   Failure to Seek Treatment

17        Likewise, the fact that Plaintiff did not seek treatment was not a specific, clear, and

18   convincing reason to find her not credible.  (Dkt. No. 14 at 6–7.)  As the Ninth Circuit has

19   explained,"it is a questionable practice to chastise one with a mental impairment for the exercise

20   of poor judgment in seeking rehabilitation" Garrison, 759 F.3d at 1018 n.24 (citations omitted).

21   "In other words, we do not punish the mentally ill for occasionally going off their medication

22   when the record affords compelling reason to view such departures from prescribed treatment as

23   part of claimants' underlying mental afflictions."  Id.

24

1    Here, the ALJ discounted Plaintiff's allegations regarding her mental impairments on the

2  grounds that Plaintiff failed to seek treatment.  (AR 31) ("Even if the claimant's episodes of

3  'dancing' are psychologically based as opposed to contrived, one would expect that the claimant

4  would follow through with recommended counseling to address the problem.")  In doing so, the

5  ALJ failed to account for multiple treatment notes and doctor opinions in the record that show

6  Plaintiff's failure to seek treatment is part of her underlying mental afflictions.  (See AR 584,

7  588, 602–603.)  In light of this evidence, the ALJ erred by finding Plaintiff was not credible

8  because she did not seek treatment.  See Garrison, 759 F.3d at 1018 n.24.

9              c.    Exaggerated Presentation

10    Plaintiff argues the ALJ erred in discounting her credibility on the grounds that her

11  presentation during consultative evaluations and with DSHS providers appeared exaggerated in

12  comparison to her presentation at appointments with providers because the ALJ relied on his

13  own opinion of Plaintiff's presentation rather than those of the examining sources.  (Dkt. No. 7 at

14  18.)  The Court agrees with Plaintiff.

15    To support his finding that Plaintiff's presentation was exaggerated, the ALJ noted that in

16  December 2008, Plaintiff reported to ARNP Spoon that she had an increase in moodiness, but on

17  the exam her "affect was normal and appropriate" and "[s]he was alert and oriented."  (AR 30.)

18  The ALJ further noted that when Plaintiff met with Edie Stone, MSW in February 2009, she was

19  not taking a mood stabilizer even though she reported that she had bipolar disorder.  Id.  The

20  notes the ALJ cites to do not provide support for his conclusion that Plaintiff's presentation was

21  exaggerated.  Id. at 336, 485.  Therefore, the fact that Plaintiff's presentation was exaggerated

22  was not a specific, clear, and convincing reason for discounting her credibility.

23  //

24

1              d.  Drug Use

2       Likewise, the fact that Plaintiff made inconsistent statements regarding her drug use was

3  not a specific, clear, and convincing reason for discounting her credibility.  (Dkt. No. 14 at 8);

4  (AR 30).

5       The ALJ concluded Plaintiff's "inconsistent and unclear statement's [sic] with regard to

6  the amount of her substance usage also makes it difficult to place much reliance on the various

7  psychological evaluations of record."  (AR at 30.)  While the ALJ refers to "substance usage" in

8  general, his opinion focuses on marijuana use.  Again, the ALJ provides a long recitation of the

9  medical evidence without explaining how the medical evidence cited to undermines Plaintiff's

10 credibility.  This is legal error.  See Burrell, 775 F.3d at 1137.  The Court can discern only one

11 instance where the ALJ attempts to explain how Plaintiff's statements regarding marijuana use

12 are inconsistent.  (AR 32.)  The ALJ points to the fact that Plaintiff reported in December 2008

13 and April 2011 that she had not used drugs for twelve years, but tested positive for marijuana.

14 (Id.)

15      This is not a specific, clear, and convincing reason to discount Plaintiff's credibility for

16 three reasons.  First, Plaintiff did not report that she did not use marijuana—she only reported

17 that she had not used drugs for the past twelve years.  (AR 447, 485.)  Second, there is evidence

18 in this record that Plaintiff had previously used methamphetamine, but stopped using it twelve

19 years ago.  (AR 333.)  In other words, Plaintiff's statement that she had not used drugs for twelve

20 years is consistent with her reports to other treatment providers.  Third, there is evidence in this

21 record that Plaintiff consistently reported to her treatment providers that she used marijuana.

22 (See AR at 336, 542, 580.)  In other words, contrary to the ALJ's conclusion, when taken as a

23

24

whole, the record supports a finding that Plaintiff was honest with her treatment providers
regarding her marijuana use.

### e.   Daily Living Activities

The ALJ also discounted Plaintiff's credibility because he found Plaintiff's activities of
daily living to be inconsistent with the symptoms she alleged.  (AR 32.)  Specifically, he found
Plaintiff's symptom allegations were inconsistent with her testimony that she "went to school,
attended to her activities of daily living without difficulty, exercised, went to church, [and] drove
to Idaho on a vacation."  (Id.)  The ALJ also pointed to the fact that Plaintiff "reported to her
counselor that it was difficult to fit an appointment into her busy schedule and talked about her
need to babysit her granddaughter" as a reason to discount her credibility.  (Id.)

However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious
in concluding that daily activities are inconsistent with testimony about pain, because
impairments that would unquestionably preclude work and all the pressures of a workplace
environment will often be consistent with doing more than merely resting in bed all day."
Garrison, 759 F.3d at 1016.  "[M]any home activities are not easily transferable to what may be
the more grueling environment of the workplace, where it might be impossible to periodically
rest or take medication.  Recognizing that disability claimants should not be penalized for
attempting to lead normal lives in the face of their limitations, we have held that [o]nly if [her]
level of activity were inconsistent with [a claimant's] claimed limitations would these activities
have any bearing on [her] credibility."  Id. (internal quotation marks and citations omitted).

The Court finds the ALJ erred in relying on Plaintiff's activities of daily living to
discount Plaintiff's credibility for two reasons.  First, it appears the ALJ failed to consider
evidence in the record that suggests Plaintiff is only able to engage in these activities of daily

living on a limited basis.  For example, at the hearing, Plaintiff testified that what she was able to do each day varied.  (AR 52.)  In September of 2011, Dr. Tartalia noted that Plaintiff's "ability to perform activities [of daily living] depend [sic] upon the extent of her discomforts and limited ranges of motion" and that Plaintiff "is very dependent upon her husband and, to a lesser extent, upon his 9-year-old son for doing the household chores, cooking, and shopping."  (AR 539–40.)  Dr. Tartalia further noted that Plaintiff reported not being able to get out of bed on some days.  (AR 540.)  He also noted that Plaintiff "usually requires someone to be with her when she is outside of the house."  (Id.)  Plaintiff also testified that she had to quit school because of her health issues, including pain and her "dancing" episodes.  (AR 50.)  Second, Plaintiff's ability to engage in these activities of daily living on a limited basis is not inconsistent with her claimed limitations.  The ALJ's failure to recognize the difference between the ability to engage in these activities on a limited basis and the ability to cope with the demands of eight hours of light work every day is a cause for concern.  As the Ninth and Seventh Circuits have noted, "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."  Garrison, 759 F.3d at 1016 (quoting Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)).

    II.    Medical Evidence

        1.    Dr. Corpolongo

    Plaintiff argues the ALJ erred by assigning little weight to the medical opinions of examining psychologist Michael Corpolongo, PhD.  (Dkt. No. 14 at 11–15.)

    Dr. Corpolongo examined Plaintiff in August 2010.  (AR 342.)  He conducted a clinical interview, mental status examination, and personally observed Plaintiff.  (Id. at 342–353.)  He opined Plaintiff would have trouble with co-workers and with supervisors if they were older or

1   unjust.  (Id. at 347.)  Dr. Corpolongo also opined Plaintiff would "ignore or avoid stress and

2   pressure" and could not maintain appropriate behavior in a work setting.  (Id.)  With respect to

3   Plaintiff's hyperactivity, Dr. Corpolongo observed that she fidgeted during the interview.  (Id. at

4   345.)  He also observed that Plaintiff's affect was labile, her mood dysphoric, and her thought

5   process vague.  (Id. at 350.)  Dr. Corpolongo further observed that Plaintiff's fund of knowledge

6   was limited.  (Id. at 351.)  He observed that Plaintiff's judgment and problem solving skills were

7   limited.  (Id.)  Dr. Corpolongo also observed that Plaintiff's insight and impulse control were

8   poor.  (Id. at 352.)

9          The ALJ gave little weight to Dr. Corpolongo's opinions because: (1) Dr. Corpolongo

10  relied on Plaintiff's subjective reports; and (2) Dr. Corpolongo's opinion conflicted with

11  Plaintiff's activities of daily living. (AR 34.)

12         The Court finds the ALJ failed to give specific and legitimate reasons, supported by

13  substantial evidence for assigning little weight to Dr. Corpolongo's opinions.  First, the ALJ's

14  conclusion that Dr. Corpolongo's opinions are based on Plaintiff's self-reporting is not supported

15  by the record, because Dr. Corpolongo's opinions are supported by his own observations.

16  Second, as discussed in further detail supra, Section I, Plaintiff's activities of daily living do not

17  show she would be capable of maintaining work on a regular basis and therefore do not conflict

18  with Dr. Corpolongo's opinions.

19                      2.      Dr. Tartalia

20         The ALJ also erred by assigning little weight to examining physician Dr. Tartalia's

21  opinions.  (Dkt. No. 14 at 3.)

22         Dr. Tartalia evaluated Plaintiff in September 2011.  (AR 537.)  He conducted a clinical

23  interview, mental status examination, and personally observed Plaintiff.  (Id. at 537–544.)  Dr.

24

Tartalia diagnosed Plaintiff with a pain disorder with both psychological factors and general medical condition, major depressive disorder with melancholic features, cannabis abuse and a personality disorder. (Id. at 542.) Dr. Tartalia opined Plaintiff's depression, anxiety, and pain would prevent her from being able to perform "even simple and repetitive work related activities." (Id. at 543.) He further opined that because of Plaintiff's low stress tolerance, concentration and focus problems, and interpersonal conflicts, she would likely be unable to accept instructions from supervisors or interact with co-workers. (Id.) Dr. Tartalia observed Plaintiff was "a poor historian having problems focusing, persisting, and keeping up with the pace of the interview." (Id. at 540.) He further observed Plaintiff was "very somatically focused and preoccupied with her internal distress." (Id. at 541.) Dr. Tartalia noted that Plaintiff's "[a]ffect was constricted if not somewhat blunted" and that her overall mood was "dysphoric, anxious, and depressed." (Id.) He further noted that Plaintiff had memory problems during testing due to "her internal preoccupations." (Id.) Dr. Tartalia observed that Plaintiff's concentration was also impaired due to her internal preoccupations and anxiety. (Id. at 542.) He further observed that Plaintiff used "concrete thinking and simplistic responses." (Id.)

The ALJ gave little weight to Dr. Tartalia's opinion because he "relied heavily on claimant's subjective allegations and her presentation during his examination." (AR at 34.) The ALJ also assigned little weight to Dr. Tartalia's opinions because he did not conduct an "in depth critical analysis" of Plaintiff's medical record. (Id.)

The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence for assigning little weight to Dr. Tartalia's opinions. First, the ALJ's conclusion that Dr. Tartalia's opinions are based on Plaintiff's self-reports is not supported by the record, because Dr. Tartalia's opinions are supported by his own observations. Second, the fact that Dr.

1   Tartalia did not conduct an "in depth critical analysis" of the other medical evidence is not a

2   legitimate reason to assign little weight to his opinions because he is an examining physician.

3   Further, even if this were a legitimate reason to assign little weight to an examining physician's

4   opinion, the ALJ's opinion does not explain the basis for his conclusion that Dr. Tartalia did not

5   conduct an in depth critical analysis of the record.

6          3.     Dr. Neims

7          Plaintiff also argues the ALJ erred by assigning little weight to examining psychologist

8   Dr. Neims's opinions.  (Dkt. No. 14 at 3.)  The Court agrees with Plaintiff.

9          Dr. Neims evaluated Plaintiff in May 2012.  (AR 578.)  He conducted a clinical

10  interview, mental status examination, and personally observed Plaintiff.  (Id. at 578–91.)  Dr.

11  Neims diagnosed Plaintiff with bipolar disorder, major depressive episode, chronic PTSD, an

12  anxiety disorder, personality disorder, and cannabis use/abuse, among other things.  (Id. at 579–

13  80. )  He concluded that Plaintiff would be severely limited in her ability to communicate and

14  perform effectively in a work setting with public contact.  (Id. at 580.)  He further concluded that

15  Plaintiff would be markedly limited in her ability to be aware of normal hazards and in her

16  ability to perform effectively in a work setting with limited public contact.  (Id. at 580–81.)  Dr.

17  Neims concluded Plaintiff would also be markedly limited in her ability to maintain appropriate

18  behavior in a work setting.  (Id. at 581.)  Dr. Neims observed Plaintiff struggled "with irritability

19  and periods of emotional defensiveness and liability."  (Id. at 583.)  He further observed

20  Plaintiff's psychomotor behavior was rigid and tense.  (Id. at 585.)  Dr. Neims also observed

21  Plaintiff's affect was labile and that her mood was dysphoric, irritable, and anxious.  (Id. at 586.)

22         The ALJ gave little weight to Dr. Neims's opinion because it "also appears to have relied

23  heavily on [Plaintiff's] subjective allegations and her presentation during his examination."  (AR

24

1   at 34.)  The ALJ also assigned little weight to Dr. Neims's opinion because "[t]he other evidence

2   of file such as the observations of her providers, her activities and her overall performance on

3   mental status examination does not demonstrate that [] [Plaintiff] would be limited to the extent

4   opined by Dr. Neims."  (AR 34–35.)

5          The Court finds the ALJ erred by assigning little weight to Dr. Neims's opinions.  First,

6   the ALJ's conclusion that Dr. Neims's opinions are based on Plaintiff's self-reports is not

7   supported by the record, because Dr. Neims's opinions are supported by his own observations.

8   Second, the ALJ does not explain how Dr. Neims's opinion are inconsistent with the

9   observations of other medical providers, her activities, and her performance on the mental status

10  examinations.  Absent further explanation, the Court cannot find that the ALJ's conclusion is

11  specific, legitimate, and supported by substantial evidence.

12                                         CONCLUSION

13         The Court, having found that the ALJ improperly discounted Plaintiff's credibility and

14  improperly discredited the medical opinions of Dr. Corpolongo, Dr. Tartalia, and Dr. Neims,

15  REVERSES the Commissioner's final decision and REMANDS this case for further

16  proceedings.

17

18         The clerk is ordered to provide copies of this order to all counsel.

19         Dated this 29th day of July, 2015.

20

21                                              Marsha J. Pechman
                                                United States District Judge
22

23

24

ORDER ON SOCIAL SECURITY APPEAL- 15